**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TIFFANY C. SWINSON,**

        **Plaintiff,**

**v.**                                          **Case No:   6:17-cv-1075-Orl-40GJK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

# REPORT AND RECOMMENDATION

Tiffany Swinson (the "Claimant") appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. No. 1. Claimant argues that the: 1) Administrative Law Judge (the "ALJ") committed reversible error by finding that Claimant did not meet the requirements of Listing 12.05(C); and 2) Appeals Council committed reversible error by applying improper legal standards to newly submitted evidence. Doc. No. 15 at 12-17, 21-24. Claimant requests that the Court reverse the Commissioner's final decision for an award of benefits or, in the alternative, remand the case for further proceedings. *Id.* at 28-29. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

## I.    PROCEDURAL BACKGROUND

On December 15, 2009, Claimant filed her DIB and SSI applications. R. 206. On May 14, 2010, Claimant's applications were denied initially. R. 82-87. On November 2, 2010, Claimant's applications were denied upon reconsideration. R. 96-99. On December 17, 2010, Claimant

requested a hearing before an ALJ. R. 101. On November 14, 2011, Claimant attended a hearing before the ALJ. R. 29-68. On January 25, 2012, the ALJ issued an unfavorable decision finding Claimant not disabled. R. 10-23. On March 30, 2012, Claimant requested review of the ALJ's decision. R. 7. On June 26, 2013, the Appeals Council denied Claimant's request. R. 1-3.

Claimant appealed the Commissioner's final decision to this Court. R. 591-596. On January 24, 2014, the Commissioner filed an unopposed motion to remand the case in order to: 1) obtain additional evidence regarding Claimant's mental impairments; 2) further evaluate whether Claimant's impairments met or equaled Listing 12.05; 3) reevaluate Claimant's residual functional capacity; and 4) obtain supplemental vocational expert testimony. R. 591. On February 14, 2014, United States District Judge Roy B. Dalton, Jr. reversed the Commissioner's final decision and remanded the case for further proceedings. R. 593-94.

On August 12, 2015, Claimant attended another hearing before the ALJ. R. 544-565. On November 17, 2015, the ALJ issued another unfavorable decision finding Claimant not disabled. R. 487-500. On December 7, 2015, Claimant requested review of the ALJ's second decision. R. 683. Claimant also submitted to the Appeals Council a January 13, 2016 Social Security Report from Dr. Flora Ann Pinder (the "Pinder Report") stating that Claimant has a full scale IQ score of 61 and providing other findings regarding Claimant's mental limitations. R. 783-785. On April 27, 2017, the Appeals Council denied Claimant's request for review. R. 412-15. On June 13, 2017, Claimant filed this appeal. Doc. No. 1.

## II.   STANDARD OF REVIEW

The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Commissioner's findings of fact are conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must take into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (citations and quotations omitted).

## III.     ANALYSIS

### A.  Listing 12.05(C)

At step three of the five-step sequential evaluation process, the ALJ must consider whether a claimant's impairments, individually or in combination, meet or equal any of the impairments contained in the Listing of Impairments. The Listing of Impairments identifies impairments which are considered severe enough to prevent a person from engaging in gainful activity. 20 C.F.R. § 404.1525(a). By meeting a listed impairment's requirements or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of age, education, or work experience. *Id*. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment at step three. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a).

If the claimant contends that an impairment meets or equals a listed impairment, the claimant bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment . . . ." *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (per curiam). Diagnosis of a listed impairment is not enough, as the claimant must also provide objective medical reports documenting that their impairment meets or equals the specific criteria of the applicable listing. *Id.* "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990).

Listing 12.05 provides the applicable criteria when a claimant argues that an intellectual disability constitutes a listed impairment. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The listing, in pertinent part, states that a claimant is disabled if he or she meets the following criteria:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied[:]
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

*Id.* Thus, an intellectual disability under Listing 12.05 refers to: 1) significantly subaverage general intellectual functioning; 2) deficits in adaptive functioning; and 3) manifested deficits in such adaptive functioning before age 22. *Id*. The Eleventh Circuit has noted that the Commissioner's regulations do not define "deficits in adaptive functioning." *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459 (11th Cir. 2015).[1] The Eleventh Circuit, however, has recognized that the

---

[1] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36–2.

Diagnostic and Statistical Manual of Mental Disorders ("DSM") defines adaptive functioning as "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting." *Id.* (citing DSM–IV–TR at 42).

A claimant must meet one of the four sets of criteria found in 12.05(A), (B), (C), or (D) to show that their impairments are severe enough to meet or equal Listing 12.05. *Id.* Paragraph C of Listing 12.05 is met when the claimant shows: 1) a valid verbal, performance, or full scale IQ of 60 through 70; and 2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at § 12.05(C). A valid IQ score between 60 and 70 creates a rebuttable presumption that the claimant satisfies the criteria of an intellectual disability under Listing 12.05(c). *Hodges v. Barnhart,* 276 F.3d 1265, 1268–69 (11th Cir. 2001). However, "a valid I.Q. score need not be conclusive of [an intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (per curiam)). In other words, a claimant's activities of daily living can rebut the presumption of satisfying Listing 12.05(c) that is created by a valid IQ score. *See Hodges*, 276 F.3d at 1269 (noting that "the Commissioner may present evidence of [the claimant's] daily life to rebut this presumption of mental impairment.").

On August 19, 2014, Claimant presented to J. Jeff Oatley, PhD, an examining physician. R. 731. On the same day, Mr. Oatley completed an evaluation regarding Claimant's mental limitations. R. 731-34. Mr. Oatley administered the Wechsler Adult Intelligence Scale Examination and provided Claimant's IQ scores from the same. R. 733. Specifically, Mr. Oatley found that Claimant scored 66 in verbal comprehension, 67 in perceptual reasoning, 83 in working

memory, 62 in processing speed, and a full-scale IQ of 63. *Id.* Mr. Oatley, however, found that "[t]esting appears an underestimate as [Claimant] lost interest as testing progressed and would make little effort on later items saying she 'didn't know.' She showed a relative strength in working memory." *Id.* Mr. Oatley also made findings on Claimant's activities of daily living:

> [Claimant] reports she lives alone, but may live with her boyfriend. She prepares meals. She goes grocery shopping and uses her [Electronic Benefits Transfer ("EBT")] card. She drove to this appointment today. She does not use public transportation. She is self-sufficient in bathing and dressing. She can do all household chores including laundry.

R. 734. At the hearing, Claimant testified that she does hair at home, charges certain rates for different hairstyles, acknowledges that her customers tip her well, and prepares her tax returns with some help calculating the total funds received from her work doing hair care. R. 553-54, 557, 559-561.

At step two, the ALJ found that Claimant had severe impairments of borderline intellectual functioning, obesity, and spine disorders. R. 490. At step three, the ALJ found that Claimant does not have an impairment or combination thereof that meets or medically equals the severity of one of the listed impairments. R. 490-92. Specifically, the ALJ found that Claimant did not meet the requirements of Listing 12.05(C):

> Finally, the 'paragraph C' criteria of listing 12.05 are not met because [Claimant] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. As discussed below herein, though [Claimant] has obtained IQ scores that fall within this 60 to 70 range, the scores were opined to be an underestimate of [Claimant's] intellectual functioning [R. 733]. In addition, [Claimant's] physical impairments, as discussed below herein, do not impose any 'significant' work-related limitation of function.
>
> Further, *even if* [Claimant] met the IQ requirements as well as had a physical impairment imposing significant work-related limitations of function, [Claimant] has not demonstrated deficits in adaptive

> functioning, which is required by the Listing in addition to the significantly sub-average general intellectual functioning. Through [Claimant's] testimony and information revealed to [Mr. Oatley], the evidence has demonstrated that on a day-to-day basis, [Claimant] possesses the mental ability to live alone, perform all activities associated with waking, dressing, bathing, cooking, eating, cleaning, and paying bills. Indeed, in 2014, [Claimant] reported that she lived alone, had a boyfriend, went grocery shopping, used her EBT card, drove a car, and was self-sufficient in bathing, dressing, and doing all household chores, including laundry [R. 734]. Further, [Claimant] has been able to earn wages doing hair. [Claimant] has demonstrated that she sets her own prices, understands the value of a good tip, and knows to file tax returns on her earnings (2014 Hearing Testimony).

R. 492. Thus, the ALJ found that Claimant did not meet the requirements of Listing 12.05(C) because: 1) while Claimant's IQ scores were within the requirements of the listing, such scores were invalid because they were found to be an underestimate of Claimant's intellectual functioning; 2) Claimant's physical impairments do not impose any significant work-related functional limitations; and 3) Claimant does not have any demonstrated deficits in adaptive functioning. *Id.*

Claimant argues that the ALJ's finding regarding Listing 12.05(C) is not supported by substantial evidence for three reasons. First, Claimant argues that the ALJ's finding regarding Claimant's physical impairments not imposing any significant work-related functional limitations is contradicted by his step two finding that Claimant suffered from severe impairments of obesity and spine disorders. Doc. No. 15 at 14-15. Second, Claimant argues that the ALJ improperly discounted Claimant's IQ scores because Mr. Oatley never expressed any doubt about the validity of the same. *Id.* at 15-16. Third, Claimant argues that the ALJ's finding regarding Claimant's failure to demonstrate any deficits in adaptive functioning is not supported by substantial evidence because the ALJ: 1) considered daily living activities that do not plainly conflict with Claimant's IQ scores; and 2) failed to adequately consider other evidence showing deficits in adaptive

functioning. *Id.* at 16-17.

### 1)  Additional Physical Impairment

The ALJ found that Claimant did not satisfy Listing 12.05(C) because her physical impairments do not impose any significant work-related functional limitations. R. 492. Claimant's first argument states that the above-referenced finding is contradicted by the ALJ's step two finding that Claimant suffered from severe impairments of obesity and spine disorders. Doc. No. 15 at 14-15. The undersigned agrees. In *Adkins v. Comm'r of Soc. Sec.*, No. 6:16-cv-754-Orl-31TBS, 2017 WL 1289912, at *6 (M.D. Fla. Mar. 20, 2017), the Court stated:

> The introductory paragraph for the 12.00 series listings states that for consideration of 12.05C claims, the Commissioner "will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (emphasis added). <u>Clearly, it is the Commissioner's intention that the 12.05C other impairment analysis be evaluated under the same standard as the step two severe impairment analysis.</u>

*Id.* (emphasis added) (citing authority). Thus, the other impairment analysis under Listing 12.05(C) is the same analysis as the one used at step two of the sequential evaluation process. *Id.*

At step two, the ALJ found that Claimant had severe impairments of obesity and spinal disorders. R. 490. "By definition, a severe impairment limits significantly a claimant's ability to do basic work activities." *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) (citing *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). Thus, the ALJ's step two finding is inconsistent with his step three finding that Claimant's physical impairments do not impose any significant work-related functional limitations. R. 490, 492. Accordingly, the undersigned finds that the ALJ erred in his application of this specific requirement of Listing 12.05(C).

In *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983), the Eleventh Circuit held that an ALJ's error is harmless if it does not affect the ALJ's conclusion. Because it is the claimant's burden to show that a certain impairment meets or equals all of the criteria for a listed impairment, the ALJ's error as to one listing requirement may be harmless if the ALJ made valid findings as to the other requirements. Thus, the undersigned will consider Claimant's other arguments regarding Listing 12.05(C).

### 2) IQ Scores

The ALJ discredited the IQ scores found in Mr. Oatley's evaluation because "the scores were opined to be an underestimate of [Claimant's] intellectual functioning." R. 492. Claimant argues that the ALJ committed reversible error in discrediting these IQ scores because Mr. Oatley "never expressed any doubt about the validity of the scores." Doc. No. 15 at 16. Mr. Oatley, however, stated that Claimant's IQ scores appear to be "an underestimate because [Claimant] lost interest as testing progressed and would make little effort on later items saying she 'didn't know.'" R. 733. Courts have held that an ALJ may rely on similar statements when determining whether a claimant's IQ scores are valid. *Smith v. Comm'r of Soc. Sec.*, 535 F. App'x 894, 897 (11th Cir. 2013) ("[T]he record supports the conclusion that, due to her limited effort during examination ... [the claimant's] IQ scores were not valid and underestimated her actual level of functioning."); *Dupree v. Colvin*, No. CV 314-074, 2015 WL 8568874, at *3-4 (S.D. Ga. Nov. 17, 2015) (citing authority). Accordingly, the undersigned finds no reversible error in the ALJ's findings regarding the validity of Claimant's IQ scores. Furthermore, because Claimant failed to present a valid verbal, performance, or full scale IQ score between 60 and 70 to the ALJ, Claimant failed to satisfy all of the requirements of Listing 12.05(c), and thus, the ALJ's above-referenced error regarding Claimant's additional physical impairments is harmless. *See supra* p. 8.

### 3)   Adaptive Functioning

The ALJ found that even if Claimant had: 1) an additional physical impairment imposing significant work-related functional limitations; and 2) a valid IQ score meeting the requirements of Listing 12.05(C), Claimant would not meet the listing because she has not demonstrated deficits in adaptive functioning. R. 492. When making this finding, the ALJ noted that Claimant: 1) has the mental ability to live alone and perform all activities associated with waking, dressing, bathing, cooking, eating, cleaning, and paying bills; 2) reported that she had a boyfriend, went grocery shopping, used her EBT card, drove a car, and does household chores; 3) earns wages doing hair care, sets her own prices for her work, and understands the value of a good tip; and 4) files tax returns on her earnings. *Id*. Claimant argues that this finding is not supported by substantial evidence because the ALJ: 1) considered daily living activities that do not plainly conflict with Claimant's IQ scores; and 2) failed to consider other evidence showing deficits in adaptive functioning. Doc. No. 15 at 16-17.

As noted above, the ALJ found the IQ scores in Mr. Oatley's evaluation to be invalid. *See supra* p. 9. However, even if Claimant presented a valid IQ score within the requirements of Listing 12.05(C) to the ALJ, he found that Claimant's daily living activities and her work doing hair care would have rebutted the presumption of satisfying Listing 12.05(c) created by those IQ scores. R. 492. As stated above, a valid IQ score between 60 and 70 creates a rebuttable presumption that the claimant satisfies the criteria of an intellectual disability under Listing 12.05(c). *Hodges*, 276 F.3d at 1268–69. However, a claimant's activities of daily living can rebut that presumption. *Id.* at 1269.

While Claimant argues that the daily living activities cited by the ALJ do not plainly conflict with Claimant's IQ scores, the Eleventh Circuit has held that the ALJ may consider similar daily living activities when rebutting the 12.05(c) presumption created by a valid IQ score. *Hickel*

*v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 984 (11th Cir. 2013) (noting the claimant's part time work at a nursery; ability to drive to work, prepare simple meals, and dress and groom herself; attending church regularly; and socialization with friends rebutted a valid IQ score presumption); *Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009) ("[The claimant] could dress and bathe himself, take care of his personal needs, and manage money. Likewise, [the claimant] could read, communicate effectively, and do simple math."); *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 774 (11th Cir. 2015) ("[The claimant] also testified that he assisted his wife with household chores such as cooking and laundry, that he did the grocery shopping for his household, that he attended church twice per week, and that he had a driver's license."); *O' Neal*, 614 F. App'x at 460 (noting that the claimant "helps at home with light yard work, looks after his two children, independently performs all his activities of personal care and daily living, and attends church every Sunday. He holds a driver's license and drives locally three times per week."); *Garrett v. Astrue*, 244 F. App'x 937, 939 (11th Cir. 2007) ("[The claimant] is able to cook simple meals; perform chores such as dishwashing and yard work; and build model cars. [The claimant's] daily activities include church attendance, television viewing, card playing, and walking in the mall."). Given the foregoing, even if Claimant presented a valid IQ score within the requirements of Listing 12.05(C) to the ALJ, he found that Claimant's daily living activities and work doing hair care would have rebutted the presumption of satisfying Listing 12.05(c) created by that IQ score. Accordingly, the undersigned finds no reversible error in the ALJ's finding regarding Claimant's lack of deficits in adaptive functioning.[2]

---

[2] Claimant also argues that the ALJ failed to consider evidence in support of her claim that she has deficits in adaptive functioning. Doc. No. 15 at 16-17. To the extent that Claimant requests such evidence to be considered, the undersigned declines to reweigh the evidence. As noted above, the Court must give substantial deference to the ALJ's decision even if the evidence preponderates against it. *Barnes*, 932 F.2d at 1358. *See also Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 864 (11th Cir. 2012) ("Because our limited review precludes us from reweighing the evidence, when the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error.").

### B.  Appeals Council Evidence

On January 13, 2016, Dr. Pinder, an examining physician, completed the Pinder Report. R. 783-785. The following findings are taken from the same. Claimant was neatly dressed and groomed, interacted pleasantly, and was overly friendly. R. 783-84. Claimant's train of thought shifted from topic to topic and her response to questions often involved asking personal questions out of context. R. 784. Claimant exhibited poor concentration and would only focus for a few minutes. *Id.* Dr. Pinder had to encourage Claimant to stay focused several times during testing. *Id.*

Claimant had a 61 full scale IQ score on the Wechsler Adult Intelligence Scale Examination. R. 784. Claimant's score was a valid and reliable indicator of her intellectual functioning. *Id.* Based on a review of referral information and test results, Claimant would not have the ability to maintain employment in sedentary, light, or unskilled work. R. 785. She has poor concentration, is unable to stay on task, and has limited overall ability. *Id.* She was able to grasp only simple instructions. *Id.* Claimant was unable to spell simple words and had poor grammar. *Id.* Claimant has shown an inability to concentrate and follow through with tasks during testing and required close monitoring and encouragement. *Id.*

Dr. Pinder acknowledged that prior testing stated Claimant was not doing her best on her mental examinations. R. 785. Dr. Pinder, however, stated that Claimant "was doing the best she was able to do." *Id.* Dr. Pinder noted Claimant's perceived lack of interest for tasks beyond her ability level but stated that this "is often a coping mechanism" for tasks that were well beyond her ability. *Id.*

Because the Pinder Report was completed after the ALJ's second decision, Claimant submitted the Pinder Report to the Appeals Council. R. 413. The Appeals Council declined to review the ALJ's decision:

Specifically, [Claimant] submitted a January 13, 2016, report from Dr. Flora A. Pinder … that indicates that [Claimant] obtained valid low IQ scores and is not able to perform any job. However, the [ALJ] evaluated the evidence of record, including the evidence from psychologist Oatley, but also addressed the evidence assuming that [Claimant] had a valid IQ score. [R. 492]. In so doing, he provided sufficient rationale for finding that [Claimant's] impairments did not meet or equal a listing and that [Claimant] did not have requisite deficits in adaptive functioning.

Based on the foregoing, we find that this evidence does not change the weight of the evidence and we find no reason under our rules to assume jurisdiction.

*Id.* Thus, the Appeals Council declined to review the ALJ's decision because, in relevant part, the ALJ found that Claimant did not demonstrate deficits in adaptive functioning, even assuming that she had a valid IQ score within the requirements of Listing 12.05(C). *Id.* Claimant's only argument challenges the ALJ's findings regarding Claimant's lack of deficits in adaptive functioning. Doc. No. 15 at 24 ("As argued above, the ALJ failed to properly evaluate [Claimant's] deficits in adaptive functioning. The ALJ committed errors of law and made findings that were not supported by substantial evidence.").

In order to determine whether remand is appropriate based on newly submitted evidence, a claimant must show that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for failure to submit the evidence at the administrative level." *Hyde v. Bowen*, 823 F. 2d 456, 459 (11th Cir. 1987).[3]

The Pinder Report is new, non-cumulative evidence. While the Pinder Report states that Claimant's IQ scores were generally consistent with her prior scores, Dr. Pinder found that Claimant obtained her IQ scores while "doing the best she was able to do." R. 785. The fact that

---

[3] Because the Pinder Report was completed after the ALJ's second decision, there is good cause for why it was not submitted to the ALJ. R. 500, 783.

Dr. Pinder found that Claimant obtained her scores while trying her best makes the Pinder Report substantively different than Mr. Oatley's evaluation, which noted that Claimant's IQ scores appeared to be an underestimate due to her lack of trying. R. 733.

The Pinder Report, however, is not material evidence. Both the ALJ and the Appeals Council found that even if Claimant had a valid IQ score within the requirements of Listing 12.05(C), Claimant's reported activities of daily living and her work doing hair care showed no demonstrated deficits in adaptive functioning. R. 413, 492. Claimant again challenges the ALJ's findings regarding Claimant's adaptive functioning. Doc. No. 15 at 24. As noted above, the ALJ is permitted to consider similar daily living activities when determining whether a claimant has demonstrated deficits in adaptive functioning. *See supra* pp. 10-11. Thus, while the Pinder Report contains a valid IQ score within the requirements of Listing 12.05(C), the Appeals Council properly found that such evidence would not have changed the administrative result because Claimant's activities of daily living and her work doing hair care would have rebutted the presumption of satisfying Listing 12.05(c) created by that valid IQ score. R. 413, 492. Accordingly, the undersigned finds no reversible error in the Appeals Council's consideration of the Pinder Report.

## IV.   CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court:

1) **AFFIRM** the Commissioner's final decision; and

2) **DIRECT** the Clerk to enter judgment in favor of the Commissioner and to close the case.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 17, 2018.

GREGORY J. KELLY<br>
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy